# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                      **Case No. 08-CR-30**

**JOSE MACIAS-PRADO**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Jose Macias-Prado pleaded guilty to unlawful re-entry after deportation, contrary to 8 U.S.C. 1326, and I set the case for sentencing. In imposing sentence, the district court must first calculate and consider the sentence recommended by the advisory sentencing guidelines. Then, to ascertain the actual sentence, it must apply the criteria set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of the defendant's particular case. United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

The guideline for unlawful re-entry cases carries a base offense level of 8, U.S.S.G. § 2L1.2(a), with varying enhancements based on the nature and severity of the defendant's convictions prior to deportation, § 2L1.2(b). For example, if the defendant was deported after a conviction for a felony "crime of violence" he receives a 16 level enhancement, § 2L1.2(b)(1)(A)(ii);[1] an 8 level enhancement for an "aggravated felony," § 2L1.2(b)(1)(C); and

---

[1] Application note 1(B)(iii) explains that: "'Crime of violence' means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use,

a 4 level enhancement if he has three or more convictions for misdemeanor crimes of violence, § 2L1.2(b)(1)(E), or for "any other felony," § 2L1.2(b)(1)(D). In the present case, defendant's deportation followed his conviction of felony battery to an injunction petitioner in Wisconsin state court. The parties agreed that this offense qualified as a crime of violence, justifying a 16 level enhancement. After granting a 3 level reduction for acceptance of responsibility, I adopted a final offense level of 21. Coupled with his criminal history category of III, level 21 produces a guideline range of 46-57 months.

## II.  SENTENCE

**A.   Section 3553(a) Factors**

When determining the actual sentence, the district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). Those factors include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

---

attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

>    (4)    the advisory guideline range;
>
>    (5)    any pertinent policy statements issued by the Sentencing Commission;
>
>    (6)    the need to avoid unwarranted sentence disparities; and
>
>    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2). This so-called "parsimony provision" represents the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

In determining a sufficient sentence, the district court may not presume that the guideline sentence is the correct one. Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Griffin, 493 F.3d 856, 868 (7th Cir. 2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range so that it can derive whatever insight the guidelines have to offer, the district court must make an independent determination based on all of the § 3553(a) factors without any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); see also United States v. Schmitt, 495 F.3d 860, 865 (7th Cir. 2007).

**B.    Analysis**

Defendant, a citizen of Mexico, entered the United States without inspection near El Paso, Texas in 1989, and never acquired lawful status. In 2003, he was convicted of felony battery to an injunction petitioner in Wisconsin state court and sentenced to 18 months in

3

prison. Immigration authorities deported him in June 2005 after he completed that sentence. Defendant returned to the United States in June or July 2007, and on December 31, 2007, West Allis, Wisconsin police arrested him for disorderly conduct, leading to his discovery by immigration authorities and the instant indictment. Defendant stated that he returned to earn money to buy a house in Mexico and to pay for surgery for a breathing problem. Defendant's brother, who lived in the United States, confirmed his motive.

Defendant was forty years old and had a somewhat troubling record, with convictions for battery in 1994, battery in 1999, and violation of a domestic abuse injunction in 2002, all misdemeanors, then the felony battery to an injunction petitioner in 2003. These convictions all appeared to involve domestic violence and alcohol abuse. But defendant indicated that during his prison stint on the final offense he received alcohol treatment, and that he had taken steps to turn his life around. He noted that he had committed no new offenses, aside from the instant crime, since receiving treatment,[2] and that he had taken alcohol treatment and English classes at the Dodge County Jail while detained in this matter.

Defendant further stated that after his 2005 deportation he met his fiancé in Mexico, and they joined a parish that helps people with substance abuse issues. They decided to come to the United States to try to earn some money to buy a house and start their new life together in Mexico. The fiancé had been deported back to Mexico and was waiting for him there. Defendant also had two children from a previous marriage, who lived with their mother in Mexico. Defendant stated that he reunited with them while he was in Mexico, but he decided

---

[2]As discussed above, defendant was arrested on December 31, 2007, which brought him to the attention of immigration authorities. However, state authorities filed no charges in connection with that arrest, which apparently involved him giving a false name rather than any drunken and violent conduct.

4

to come back here for financial reasons. During his allocution at sentencing, defendant expressed remorse for his conduct, which seemed genuine, and promised not to return to this country. Defendant also expressed gratitude for the treatment he had been able to obtain in this country, which allowed him to make positive changes in his life.

The guidelines recommended a term of 46-57 months, but I found that range greater than necessary to satisfy the purposes of sentencing. The range was largely the product of the 16 level enhancement defendant received based on his prior conviction for a felony crime of violence. While defendant's prior record contained domestic violence convictions, including one felony, I found that under the circumstances of this case the 16 level enhancement produced a more severe penalty than was necessary to provide just punishment, protect the public or deter defendant from re-offending.

First, as I have noted in previous unlawful re-entry cases, the 16 level enhancement may in some instances overstate the severity of the defendant's particular, prior conviction. See United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 961-63 (E.D. Wis. 2005). This case provided another example. Defendant's qualifying conviction would have been a misdemeanor but for the identity of the victim, a woman who held an abuse injunction against him. Compare Wis. Stat. § 940.19(1) ("Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor."), with Wis. Stat. § 940.20(1m) ("Any person who is subject to an injunction under s. 813.12 . . . and who intentionally causes bodily harm to the petitioner who sought the injunction by an act done without the consent of the petitioner is guilty of a Class I felony."). According to the PSR, the victim in defendant's case did not suffer injuries such that the charge would otherwise have been a felony; nor did the case involve a weapon.

5

I further noted that but for the fact that state law classified the 2003 battery conviction a felony, defendant would otherwise have qualified for the 4 level enhancement under § 2L1.2(b)(1)(E), which is applicable to those with three prior convictions for misdemeanor crimes of violence. Had <u>that</u> enhancement applied, defendant's guideline range would have been 10-16 months, rather than 46-57 months. This illustrated the dramatic consequences of the 16 level enhancement that often applies in these types of cases. Under the circumstances of this case, I concluded that defendant's felony battery conviction did not justify punishment consistent with the 16 level enhancement.[3]

Second, I took into account defendant's alcohol treatment and new relationship, which seemed stable based on the letters from his fiancé defendant submitted. The letters indicated that the fiancé would stick with defendant and was eagerly awaiting his return to Mexico.[4] I found that so long as he remained sober and in a stable relationship, he did not present a risk of repeating his past misconduct. These factors made him less of a danger to the public than the guidelines suggested.

Finally, I considered defendant's motive and conduct upon re-entry. He returned in

---

[3] I further noted that the Sentencing Commission, in one of its recently proposed amendments to the guidelines, stated that a departure may be warranted in cases where the 16 level enhancement overstates the seriousness of a prior conviction. See United States Sentencing Commission, Notice of Submission to Congress of Amendments to the Sentencing Guidelines Effective November 1, 2008 58, available at http://www.ussc.gov. I did not depart in this case or specifically rely on this proposal. However, the proposal did acknowledge the potential flaw in this guideline, which I have discussed.

[4] The government noted that in some of the letters, defendant's fiancé expressed displeasure that he did not write to her. While he perhaps could have been a better correspondent, I saw nothing in the letters suggesting that their relationship was in peril. In one of the letters, the fiancé indicated that they had argued in the past, but the letters contained no suggestion of violence.

6

order to earn money to try to start a new life and pay for an operation, not to commit new offenses or for any other unlawful purpose. I have noted in previous re-entry cases the importance of this factor in imposing sentence. See, e.g., United States v. Arguijo-Cervantes, No. 07-CR-247, 2008 WL 644887, at *3 (E.D. Wis. Mar. 6, 2008) (collecting cases). The PSR indicated in ¶ 47 that after his re-entry in 2007 defendant returned to his job as a grinder at Global Power in West Allis, where he had previously worked for six years prior to his deportation. Defendant's steady employment in the United States – and the willingness of his employer to rehire him – demonstrated a strong work ethic. The PSR in ¶ 43 also discussed the various surgeries defendant underwent as a child due to problems eating and swallowing, and indicated that he currently suffered from breathing problems. Thus, the PSR contained facts substantiating defendant's motive of returning to work to earn money for an operation. This motive did not excuse his violation of the law, but it did cast his offense in a somewhat different light compared to some others who return to deal drugs or engage in other harmful activity.

Under all of the circumstances, I found a sentence of 24 months sufficient but not greater than necessary. In imposing this sentence, I recognized the serious nature of defendant's 2003 conviction, which qualified as a felony, as well as his previous history of domestic violence. I therefore did not sentence him by analogy to § 2L1.2(b)(1)(E). This was a significant sentence, longer than any previous term he had served, and thus sufficient to impress upon defendant that he could not return to this country unlawfully. Defendant had a fiancé and other family waiting for him in Mexico, which would provide him with support in that country and an incentive not to come back. This sentence varied from the guidelines, but because it was based on the particular facts of the case discussed above, it created no

7

unwarranted disparity. Indeed, to follow the guidelines, which placed this defendant in the company of murderers, rapists, arsonists, and kidnappers, see U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (listing offenses that qualify for a 16 level enhancement), would have created unwarranted uniformity.[5]

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 24 months. Based on his financial situation, I determined that he lacked the ability to pay a fine and so waived the fine. Finally, because defendant would be deported upon completion of this sentence and thus not available for supervision, I imposed no supervised release, which is not required by statute for this type of offense. See United States v. Parker, 508 F.3d 434, 442 (7th Cir. 2007) (noting that "supervised release is discretionary absent a separate statutory provision making it mandatory").

Dated at Milwaukee, Wisconsin, this 6th day of June, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[5] I noted defendant's request for fast-track consideration, but to the extent that Kimbrough may have superseded the Seventh Circuit's treatment of this issue, see, e.g., United States v. Rodriguez-Rodriguez, 453 F.3d 458, 462-63 (7th Cir. 2006) (holding that the district court may not reduce a sentence based on the lack of a fast track policy in the district), I declined in the exercise of discretion to reduce the sentence further based on this factor. Compare United States v. Gomez-Herrera, 523 F.3d 554 (5th Cir. 2008) (continuing to hold, after Kimbrough, that district courts may not consider fast track), with United States v. Rodriguez, No. 06-2656, 2008 WL 2265898 (1st Cir. June 4, 2008) (overruling prior circuit precedent and holding that district courts may consider fact track in light of Kimbrough).

8